**IN THE COURT OF APPEALS OF IOWA**

No. 17-1561
Filed May 16, 2018

**IN THE MATTER OF M.L.,**
**Alleged to be Seriously Mentally Impaired,**

**M.L.,**
     Respondent-Appellant.
_____

     Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.

     A prison inmate appeals an order for involuntary hospitalization.

**AFFIRMED.**

     Sandra R. Hart of Hart Law, North Liberty, for appellant.

     Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for appellee State.

     Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

The Iowa Department of Corrections (DOC) successfully sought an involuntary hospitalization order against M.L. after the offender engaged in a series of aggressive acts toward prison staff. On appeal, M.L. contends the record does not support the district court's finding he would be likely to injure others if allowed to remain at liberty (within the prison system) without treatment. *See* Iowa Code § 229.1(20) (2017). Because the State offered clear and convincing evidence M.L. suffered from a serious mental impairment, we affirm the involuntary hospitalization order.

## I. Facts and Prior Proceedings

M.L. was incarcerated after his 2012 conviction for theft in the first degree. While in DOC custody, M.L. has been diagnosed and treated for bipolar disorder type I and antisocial personality disorder. In February 2016, M.L. refused to take prescribed medications and attempted to assault a DOC staff member. As a result, the DOC transferred M.L. to the Iowa Medical and Classification Center (IMCC) and treating physician Gary Keller initiated the civil commitment process.[1] M.L. showed signs of improvement and expressed a willingness to take his medication. Although M.L. spit on and struck a correctional officer in April 2017, M.L. had made enough progress that Dr. Keller recommended the civil commitment process terminate in May 2017.

---

[1] Our case law uses the terms "involuntary hospitalization" and "civil commitment" interchangeably in describing the process under chapter 229. *See, e.g.*, *B.A.A. v. Chief Med. Officer, Univ. of Iowa Hosps.*, 421 N.W.2d 118, 122–23 (Iowa 1988).

But just a few weeks later, M.L. claimed he overdosed on medication he hoarded in his cell. And then he stopped taking his medication altogether. He again spit on a DOC officer. Following these events, M.L. was transferred back to IMCC for evaluation and treatment. The next day, he threatened to kill a nurse over a disagreement about a nail clipper. Due to M.L.'s erratic behavior and unwillingness to take his medication, the DOC again initiated civil commitment proceedings. Then, a few days later, M.L. made sexual comments to a nursing student prompting the supervising nurse to instruct the student to leave. Angry over the supervising nurse's decision, M.L. threatened the supervising nurse.

In June 2017, following a hearing and after considering Dr. Keller's written report, a judicial hospitalization referee determined M.L. was seriously mentally impaired, dangerous, and should be involuntarily hospitalized. M.L. appealed to the district court claiming he did not suffer from mental illness and was willing to take his medication to avoid commitment. In his testimony, Dr. Keller expressed concern about M.L.'s willingness to comply with mental-health treatment, noting M.L. previously had the chance to regulate his own medication and he stopped taking it, resulting in his aggressive behavior. M.L. asserted his troubling behavior was the result of his conscious choices and would not be mitigated by medication. The district court concluded M.L. was mentally impaired to the extent he is not able to make responsible decisions regarding his treatment and is likely to physically injure others, making involuntary hospitalization appropriate. M.L. now appeals the district court's findings.

## II.     Scope and Standard of Review

We review challenges to the sufficiency of the evidence supporting civil commitment proceedings for legal error.  *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013).   Claims asserted in the involuntary hospitalization application must be shown through clear and convincing evidence.  Iowa Code § 229.13(1) (2017); *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998).  Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *J.P.*, 574 N.W.2d at 342 (quoting *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995)).  The district court's factual findings are binding on this court if supported by clear and convincing evidence.  *Id.*

## III.     Analysis

To civilly commit M.L., the State was required to prove he had a "serious mental impairment."  *See* Iowa Code §§ 229.1(20), 229.6(2)(a)(2), 229.13(1).  The term "serious mental impairment" refers to:

> [T]he condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness . . . [i]s likely to physically injure the person's self or others if allowed to remain at liberty without treatment.

*Id.* § 229.1(20)(a).   On appeal, M.L. does not challenge the district court's determination he is mentally impaired and unable to make responsible decisions about his treatment.   He only disputes the court's conclusion he "is likely to

physically injure others if allowed to remain at liberty without treatment."[2]  Our cases refer to this element as the endangerment component.

To decide if the evidence satisfies this component, courts must exercise "predictive judgment" based on "prior manifestations" but focus on likely future conduct.  *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986).  And "[e]vidence to support that judgment must come in the form of a 'recent overt, act, attempt or threat.'"  *In re Foster*, 426 N.W.2d 374, 377 (Iowa 1988) (quoting *Stamus v. Leonhardt*, 414 F. Supp. 439, 451 (S.D. Iowa 1976)).  "[A]n 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury."  *Id.* at 378.  It is not enough to highlight bizarre or "socially unacceptable" behavior.  *Id.* at 379.

M.L.'s conduct was more than socially unacceptable.  Dr. Keller's reports detailed overt acts signaling M.L.'s likelihood to injure another person in the prison environment in the future.  For example, roughly a month and a half before his civil commitment, M.L. spat on a correctional officer and then struck the officer with closed fists, only stopping once restrained.  M.L. spat at officers on a separate occasion when he was being restrained for disruptive behavior.  M.L. also twice threatened to either harm or kill a nurse in the prison.  *See generally In re B.T.G.*, 784 N.W.2d 792, 798 (Iowa Ct. App. 2010) (finding substantial evidence to

---

[2] To the extent M.L. questions whether Dr. Keller complied with Iowa court rule 12.13(10) requiring his report to detail the basis for the medical diagnosis, M.L. did not preserve error because his counsel did not argue this to the district court.  *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (noting issues must be raised in the district court and ruled upon to be considered on appeal).

establish inmate was likely to physically injure himself or others because of his mental illness when he threatened to harm prison staff and their children and was striking out at the walls and door of his cell).

M.L. contends these incidents do not qualify as recent overt acts demonstrating his dangerousness because no physical injury resulted. M.L. overstates the endangerment requirement. An overt act does not have to result in injury; rather it must be a sign of *likely future* physical harm. *See In re R.A.N.*, No. 08-1676, 2009 WL 1914213, at *2 (Iowa Ct. App. July 2, 2009) ("Satisfaction of the 'recent overt act, attempt, or threat' requirement does not demand a showing of a resulting physical injury."). M.L. also argues a lack of evidence showing he took steps to follow through with his violent threats or that he had the apparent ability to do so. But a threat to kill—standing alone—can qualify as an overt act for purposes of chapter 229. *Id.* ("Overt acts include behavior such as threats to kill.").

Given M.L.'s history of aggressive acts, threats towards others, and his history of refusing his medication, the district court did not err when concluding the recent overt acts cited by Dr. Keller reveal M.L. is likely to harm others if not civilly committed. Because there is clear and convincing evidence in the record showing M.L. suffers from a serious mental impairment, we affirm the involuntary hospitalization order.

**AFFIRMED.**